UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON THOMAS<br><br>         Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE<br>CORPORATION, et al.<br><br>         Defendants. | Case No.:  20cv718-LAB (BLM)<br><br>**ORDER GRANTING MOTION<br>FOR SUMMARY JUDGMENT** |

Plaintiff Jason Thomas filed this putative consumer class action against Costco Wholesale Corporation, bringing claims based on the marketing and sale of earbuds. Thomas is a California citizen and Costco is a Washington corporation; jurisdiction is based on the Class Action Fairness Act. Thomas alleges he purchased earbuds advertised as the latest version of the 2nd Generation Apple AirPods that were capable of wireless charging. He argues that the earbuds were an "unknown hybrid mix" that did not include a wireless charging case, and were incapable of wireless charging. Specifically, he alleges the earbuds were advertised as "Apple AirPods Wireless Headphones with Charging Case (2nd Generation)." (Compl., ¶ 28.) Apple's product description for Wireless AirPods is attached as an exhibit to the complaint, as is the Costco listing Thomas relied on.

Costco filed a motion to dismiss, providing information from Apple showing that Apple sells two different kinds of wireless AirPods for different prices, the more expensive of which comes with a wireless charging case, and the less expensive of which comes with a standard charging case. With the former, the AirPods can be charged by putting them in the wireless charging case and placing it on a charging mat. With the latter, the AirPods themselves are wireless, but the charging case is not. Costco argues that Thomas bought the less expensive version which was accurately advertised, and asks that the Complaint be dismissed. Alternatively, Costco asks that the Court strike portions of the Complaint purporting to bring claims by non-California residents who incurred no injury in California. (*See* Compl., ¶ 7 (alleging that Costco's nationwide sale and advertising of the AirPods violates California laws).)

Both parties asked the Court to take notice of information on company websites. While judicial notice of some websites is authorized, the websites referenced by the briefing were not of the type that could properly be judicially noticed, even though the parties did not dispute the websites' authenticity or object to judicial notice. The Court therefore converted the motion to a motion for summary judgment and permitted the parties to file evidence. They have done so, although in part they ignored the Court's direction regarding judicial notice. Neither party has sought discovery or shown a need for more information. *See* Fed. R. Civ. P. 56(d). The motion is now fully briefed and ready for decision.

**Judicial Notice**

Thomas argues that the Court can properly take judicial notice of websites and other documents, as long as they are "publicly accessible." Under Fed. R. Evid. 201, a fact to be noticed "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." While publicly-accessible websites

are sometimes reliable enough to be the proper subject of judicial notice, not all such websites satisfy the Rule 201 standard. For example, Thomas asks the Court to take notice of customer reviews for the AirPods on Costco's website, as well as the websites of other retailers.

To the extent that Thomas is asking the Court to take notice of the fact that certain reviews were posted, the webpage is not reliable or accurate enough. By their nature, customer reviews change over time as more people review the products and reviews are voted up or down. At the time Costco's reviews were sampled, a total of 12,369 reviews had been posted, though of course not all were listed in the materials Thomas submitted.

But if Thomas is asking the Court to take notice of the reviews for the truth of their content, the material is even less appropriate for judicial notice. The reviews' opinions are not generally known within this jurisdiction, nor are they accurate beyond any reasonable question. However, Costco concedes that the Court can treat the materials as evidence, and argues that the result would be the same either way.

The doctrine of incorporation by reference is similar to judicial notice, but not the same.  Even at the pleading stage, federal courts can consider documents or other materials attached to the complaint, or on which a claim necessarily depends. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018) (discussing the doctrine). This doctrine applies to materials incorporated into the complaint, however, not in a defendant's motion to dismiss. *Id*. at 1003. The Court will treat all supplemental materials as proffered evidence.  The Court has reviewed all the evidence, although this order discusses only the evidence that is directly relevant to the Court's analysis and ruling.

The parties appear to agree that Thomas bought the AirPods and was confused about what he was buying. There appears to be no real dispute that some other customers were also confused and thought they were buying AirPods

with a wireless charging case. The disputed factual issue is whether their confusion was reasonable.

**Legal Standards**

    **Motion to Dismiss**

A plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court need not accept legal conclusions couched as factual allegations. *See Twombly,* 550 U.S. at 555.

New or expanded allegations in opposition to a motion to dismiss are considered when deciding whether to grant leave to amend, but are not considered when ruling on a 12(b)(6) motion. *See Schneider v. Cal. Dep't of Corr. & Rehab*., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). This is significant here, because in his briefing on the motion to dismiss, Thomas both abandons some of his earlier contentions based on his post-filing investigation, and proffers class definitions that were not included in the Complaint. The Court is examining the Complaint as filed, but will also consider changes Thomas intends to make to it.

    **Summary Judgment**

Summary judgment is appropriate where "there is no genuine issue as to any material fact . . . the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the moving party's (here, Costco's) burden to show there is no factual issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to show there is a genuine factual issue for trial. *Id*. at 324. The

non-moving party must produce admissible evidence and cannot rely on mere allegations. *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 n.14 (9th Cir. 2008). This can be done by presenting evidence that would be admissible at trial, *see Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002), or by pointing to facts or evidence that could be presented in admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). But evidence that is not admissible and could not be presented at trial in admissible form is not enough to resist summary judgment. *See Orr*, 285 F.3d at 773.

The Court does not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. Not all factual disputes will serve to forestall summary judgment; they must be both material and genuine. *Id*. at 247–49. Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Id*. at 248. If the evidence is so insubstantial that jurors could not find for the plaintiff without engaging in speculation, summary judgment is appropriate. *Id.* at 249–50 (requiring a non-moving party to present "sufficiently probative" evidence to permit a jury to return a verdict for that party); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[A] jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation.").

**Discussion**

**Legal Basis for Claims**

Although four claims are pled, the parties agree that all claims are governed by a "reasonable consumer" standard, and the briefing focuses on the issue of whether Costco's product listing could mislead a reasonable consumer.

A plaintiff bears the burden of showing that members of the public are likely to be deceived. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 2005). The advertisement or listing need not be literally false to be actionable; a plaintiff can recover if the advertising is misleading, or is likely to deceive or confuse the public. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002). In general, the advertisement itself will be the primary evidence. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

The standard requires more than a possibility that the label might be misunderstood by a few consumers viewing it in an unreasonable way. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Rather, it requires the probability that a significant portion of consumers, "acting reasonably in the circumstances, could be misled." *Id*. (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. App. 1 Dist. 2003)). The standard does not protect unwary, unreasonable consumers, and unreasonable misunderstandings are not actionable. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019); *Lavie*, 105 Cal. App. 4th at 508. For example, a plaintiff cannot establish a claim merely by pointing to plausible misunderstandings of a product description. *Becerra*, 945 F.3d at 1229–30.

Faced with a substantial amount of evidence, it can be tempting to apply the principle, "Where there's smoke, there's fire," and to conclude that there must be a claim lurking somewhere. But the amount of relevant evidence does not change the analysis; it is the quality, rather than the quantity, that counts. In *Becerra*, which was decided at the pleading stage, the plaintiff pointed to numerous pieces of evidence, including a commissioned survey of 800 consumers about their understanding about what they expected of "diet" soft drinks. *See Becerra*, 2018 WL 3995832, at *6–7 (N.D. Cal., Aug. 21, 2018) (discussing the survey). But because the survey and other evidence did not shed light on the key question — what a "reasonable consumer" would understand the term "diet" to mean — it was

not enough to render the claim plausible. *See* 945 F.3d at 1231 (holding that the survey could not render the claim plausible, because it failed to address consumers' reasonable understandings about soft drinks labeled "diet").

### The Product and Costco's Representation

Apple's AirPods are headphones or earbuds compatible with Apple products. They offer several attractive features, including the fact that they are wireless, meaning that users can simply insert them into their ears, and they will function without the need for attached wires. The AirPods also offer other features, such as their ability to detect whether the user is wearing them.

Thomas originally thought that all 2nd Generation AirPods came with wireless charging cases and were capable of wireless charging. His initial confusion about what he was buying was due at least in part to this. Since filing the Complaint, however, Thomas learned that the AirPods Costco advertised and sold were one of two 2nd Generation configurations of AirPods available from Apple. (*See* Docket no. 13-1 at 3:8–11.) The other configuration, which was more expensive, offered a wireless charging case. The parties agree that both configurations are 2nd Generation Apple AirPods. Since then, Apple has also begun offering a third product, "AirPods Pro."

The Complaint attaches as exhibits a promotional product description from the Apple website, as well as Costco's listing for the AirPods. On the Apple website, the AirPods themselves are clearly shown as being wireless, and on page 1 are described as "Wireless to the fullest". (Compl., Ex. A at 2.) This last phrase is accompanied by a description of the things AirPods can do wirelessly; charging is not, however, mentioned. The only prominent mention of wireless charging is on page 5 of Apple's description, which mentions the new wireless carrying case and provides a link customers can click on to buy it. Several footnotes also describe the testing Apple conducted on its product, and mention that testing was done with

/ / /

the AirPods as well as both the "Charging Case" and "Wireless Charging Case" units.

The Complaint also attaches Costco's listing for the AirPods, which identifies them as "Apple AirPods Wireless Headphones with Charging Case (2nd Generation)." Thomas' only challenge to this listing is what he views as its implication that the Charging Case is wireless. He agrees that the "2nd Generation" description is accurate. The listing repeats language from Apple's product description, including its description of the AirPods as "Wireless to the fullest" and surrounding text.[1] The charging case is mentioned, but is not labeled either wireless or wired.

Costco has also offered Apple's side-by-side listing of its two AirPods products. (Docket no. 13-1, Ex. A.) While Thomas disputes the significance of this evidence, he does not argue that it is inauthentic or inadmissible. Apple describes its first configuration as "AirPods with Wireless Charging Case" and its second as "AirPods with Charging Case." The list price for the former is $199.00, while the latter is offered for $159.00. Costco offered its AirPods (the second configuration with wired charging case) for $139.99. On the basis of this evidence, it is clear that anyone who reviewed Apple's own product listings would know that Apple offered two different configurations of AirPods for different prices, and that the difference between the two was whether they came with a wireless or wired charging case.

The nature of the products Apple offered for sale is significant, because consumer confusion as alleged in the Complaint and as illustrated in some of the proffered customer reviews is based on customers' awareness of the products

---

[1] As in the Apple description, this phrase is used as a heading for text describing how easy the AirPods are to use. They are described as "always on and always connected," sensing whether they are in the owner's ears and responding accordingly (*e.g.,* pausing when removed), and compatible with other Apple products.

Apple sells. To a customer unfamiliar with Apple's AirPods and depending solely on Costco's description, they appear to be earbuds or headphones compatible with Apple products that also offer several attractive features. The briefing makes clear that wireless charging is a feature of some but certainly not all wireless earbuds. A customer with no awareness of Apple products would have no basis for believing that merely because earbuds are wireless or can communicate with Apple devices wirelessly, they are also capable of wireless charging. In other words, the possibility of confusion only arises when buyers are aware that Apple's AirPods are available with wireless charging.

Thomas has proffered other Costco AirPods listings with some modifications, along with customer reviews showing some customers complained publicly that they were confused about what they bought. Thomas has highlighted the reviews he believes support his claims. All told, he points to ten different reviews. (*See* Docket 12-2 at 30–39.)

Even assuming evidence of customer reviews is competent and could be offered in admissible form,[2] it is not particularly helpful, though, for several reasons. First, the reviews are responding to several different listings, and the other listings, instead of "2nd Generation," say "Latest Model." (Docket 12-2, Exs. C, D.) Several of the negative reviews Plaintiff highlights are based on the "Latest Model" language that Thomas did not see or rely on. Second, at least half of the highlighted reviews are based on the erroneous idea that all of Apple's 2nd Generation AirPods come with a wireless charging case.

/ / /

---

[2] This evidence in its present form would not be admissible at trial. The reviews lack foundation, and are hearsay. Even assuming Thomas could locate the customers and present their testimony at trial, all the reviews show is that people were confused and blamed Costco. They fail to show that the confusion was reasonable.

Thomas himself erroneously believed all of Apple's 2nd Generation AirPods came with a wireless charging case and were capable of wireless charging, and that because the AirPods he bought lacked this feature, they must not have been true 2nd Generation AirPods. (Compl., ¶ 27.) This was contrary to Apple's own product descriptions, and was unreasonable. Some reviewers made the same unreasonable error, concluding that because the charging case was not wireless, the AirPods were not the "Latest Model" or were not 2nd Generation. Others refer to "the wireless charging case" (or similar), showing their awareness of Apple's products.

The reviews have the opposite effect than Thomas intends, however. Rather than showing that a substantial number of customers acted reasonably but nevertheless were misled or confused, the evidence shows that dissatisfaction with the AirPods description in part stemmed from reviewers' unreasonable mistakes, or other complaints that are not the subject of this action. Of the reviews Thomas highlights, no more than half said they were confused by the language of the listing;[3] all other reviews made more general observations, or erroneously thought they had been sold an older generation of product, making the same unreasonable error that Thomas did. Given the large number of reviews (over 12,000), Thomas has not pointed to any evidence that a "substantial number" of people, acting reasonably, were confused by the language of the listing.

/ / /

---

[3] Reviewers using the screen names Elia, Frank, Allen S, and BernBoots said they thought the listing mentioned a wireless charging case or wireless charging. Elia's review is somewhat ambiguous about the cause of the confusion, however. The reviewer Don D complained that the description failed to mention what kind products came in the bundle. But that reviewer's complaint is also based on the mistaken belief that only 1st Generation charging cases were wired, so the basis for the confusion is not clearly identified.

Thomas also offers two declarations from purchasers, essentially saying the same thing. (Docket no. 12-2, Exs. H, I.) But these add little to the analysis. They merely say the declarants purchased AirPods from Costco, and after reviewing Costco's listing they believed the AirPods could be charged wirelessly. While they show that some people were confused, they do not show that the confusion was reasonable.

Thomas also argues that the frequent mention of "wireless" in the listing is likely to cause reasonable confusion. In every context, however, "wireless" is referring to the AirPods themselves. The AirPods' wireless capability is one of their chief selling points, so it is hardly surprising that the listing would mention it. The charging case is scarcely mentioned, and neither the case nor the method of charging are described as wireless. Thomas also argues that the heading of the listing can reasonably be interpreted to mean that both the AirPods and the case are wireless. In the description "Apple AirPods Wireless Headphones with Charging Case (2nd Generation)" he suggests that "Wireless" could apply not only to the Headphones but also to the Charging Case. He would be on stronger ground if the listing said "and," which might give rise to a plausible ambiguity. But the fact that it says "with" makes his construction strained and untenable.

Thomas offers as evidence other online retailers' listings of the same AirPods that Costco sold, albeit with different descriptions, all of which sold for prices similar to Costco's. (Docket 12-2, Exs. E (Walmart.com), F (Target.com), and G (Amazon.com).) Walmart.com uses the identifier "Apple AirPods with Charging Case (Latest Model)," and also suggests purchase of a "lightning" cable with the product. Target.com uses the identifier "Apple AirPods with Wired Charging Case." Amazon.com identifies them as "Apple AirPods with Wired Charging Case." All three listings were captured on July 24, 2020, about four months after Thomas bought his AirPods from Costco, and well after he filed this action. Thomas' argument is that because other retailers either mentioned the charging case being

wired, or else omitted the word "wireless," Costco's description was misleading. The fact that other retailers described the same products differently shows that different descriptions were feasible, but does not show that Costco's description was improper or misleading. There is no evidence of whether they ever used wording similar to Costco's, when they adopted the wording they were using as of July 24, or why they chose it.

It is understandable that hopeful customers might read into the listing what they hope to see there. *See Freeman*, 68 F.3d at 289–90 (rejecting as unreasonable plaintiff's argument that language in a mailing could be read as telling him he had won the sweepstakes). But given the lack of any other mention of the case being wireless, such an interpretation is unreasonable. *See id.* (emphasizing that representations must be read in context). Similarly, Costco is not liable for customers' misunderstandings based on their own unreasonable beliefs about the products Apple sold.

The Court finds the analysis of *Becerra* particularly helpful here. In that case, the Ninth Circuit evaluated the use of the word "diet" on soft drink labels and rejected the plaintiff's allegation that reasonable consumers might plausibly understand it to promise weight loss. The opinion discussed in detail the common understanding of the term. Even though claims were dismissed at the pleading stage, the opinion also discussed at length supporting evidence proffered by the plaintiff to show that the claims were plausible. Consumer polls and studies that only hinted at consumers' understanding did not render the claim plausible, the panel held. *See* 945 F.3d at 1231. And unreasonable mistakes or confusion were simply not enough. It bears emphasis that *Becerra* was decided at the pleading stage. At the summary judgment stage, the Court considers the quality of the evidence, including whether it could be presented in an admissible form.

Here, although Thomas has pointed to outside evidence in an effort to establish what consumer expectations were, the evidence is similarly lacking in

20cv718

foundation. Furthermore, because the Court is applying the summary judgment standard, the proffered evidence must be substantial enough that a reasonable jury could find for Thomas. While it is evident some consumers were confused by Costco's listing, evidence offered to show that these consumers were "acting reasonably in the circumstances," *see Ebner*, 838 F.3d at 965, is lacking. This flaw means the case cannot go forward.

Thomas has not pointed to evidence sufficient to show that Costco's listing would mislead or confuse reasonable consumers, he has not met his burden of showing a genuine issue of material fact for trial.

**Nationwide Allegations**

Even though the Complaint did not include a class definition, it appeared Thomas was attempting to bring claims on behalf of a nationwide class. (*See* Compl., ¶ 7 (alleging that Costco's nationwide sale and advertising of the AirPods violates California laws).) In his opposition to Costco's motion Thomas clarified that he does intend to represent a nationwide class, but only as to his negligent misrepresentation claim. He provided a class definition that he intends to add to an amended complaint. Even though Costco is a Washington corporation, he cites California law as providing the standard for such a claim.

It does not appear that Thomas can represent a nationwide class as to this claim, at least not under California law. A federal court sitting in diversity looks to the forum state's choice of law rules to determine the controlling substantive law. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012).

California's three-step government interest test is outlined in *Mazza*, 666 F.3d at 590. In brief, the first two steps pertain to determining whether two states have competing standards; if they do, the third step directs courts to apply the law of the state with the greater interest. Without belaboring the point, California has no interest in having its law of negligent misrepresentation applied to product listings that originated outside California, were seen by consumers outside

California, led to those consumers buying products outside California, and have no connection to California. *See Jackson v. Gen'l Mills, Inc.*, 2019 WL 4599845, slip op. at *4 (S.D. Cal., Sept. 23, 2019) (citing *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)).

Given that there are "material variations" among the states' negligent misrepresentation laws, *Larsen v. Vizio, Inc.*, 2015 WL 13655757, at *3 (C.D. Cal., Apr. 21, 2015) along with the fact that the interest of all other states would outweigh California's interest, the Court would be required to apply a diversity of laws to the nationwide class's claims.

The Court can apply *Mazza* even at the pleading stage *See Larsen*, 2015 WL 13655757 at *2–4 (finding that claims under California consumer protection laws, along with negligent misrepresentation and fraud claims, could not be brought on behalf of a nationwide class).

Because the Complaint does not include a nationwide class, there is no need to strike nationwide class claims from it. However, on the showing he has made, Thomas will not be allowed to add a nationwide class definition.

**Conclusion and Order**

Thomas cannot satisfy the "reasonable consumer" standard, because he cannot show that his mistake about the AirPods he bought from Costco was reasonable. Rather, his misunderstanding was based in part on his own unreasonable mistake, and an unreasonable interpretation of Costco's product listing. Nor is there any evidence that a substantial number of other purchasers, in spite of acting reasonably under the circumstances, were misled. The standard set forth in cases such as *Kasky* 27 Cal. 4th 939; *Lavie*, 105 Cal. App. 4th 496; and *Williams*, 552 F.3d 934 is not met. Failure to satisfy this standard is fatal to all his claims. The Court therefore holds that Costco is entitled to summary judgment.

/ / /

/ / /

Thomas' claims are **DISMISSED WITH PREJUDICE** and the putative class claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to close the docket.

**IT IS SO ORDERED**.

Dated:  March 12, 2021

*Larry A. Burns*
Honorable Larry Alan Burns
United States District Judge